UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

MICHAEL STEINER, II
and HEATHER STEINER,

      Debtors.
_____/

Case No. 08-33717-dof
Chapter 7 Proceeding
Hon. Daniel S. Opperman

## OPINION OVERRULING THE TRUSTEE'S OBJECTION TO THE DEBTORS' AMENDED EXEMPTIONS OF THEIR 2008 TAX REFUNDS

Collene K. Corcoran, the appointed Chapter 7 Trustee in this case, objected to the Debtors' action to amend their exemptions to include a 2008 federal income tax refund of $5,535 and a 2008 state refund of $920. The Court heard arguments regarding this matter and conducted an evidentiary hearing on September 15, 2009. For the reasons stated in this Opinion, the Court overrules the Trustee's objection.

### Background

On September 11, 2008, the Debtors filed a Petition seeking relief under Chapter 7 of the Bankruptcy Code. The Schedules filed by the Debtors on that day did not disclose a tax refund in Schedule B and likewise no tax refund was claimed as exempt in Schedule C. Both Debtors testified that when they met with their attorney, Mr. Ponsetto, he did not ask them about any tax refunds and they did not know that a tax refund was part of a bankruptcy estate. As an officer of the Court, Mr. Ponsetto also indicated that he did not ask the Debtors about prior years tax refunds because he was of the opinion that tax refunds were not property of the estate. Mr. Ponsetto also stated that his review of his work papers indicated that there was not a check mark next to the categories regarding

1

tax refunds, which indicated that he did not ask these Debtors about tax refunds when he met with them. Both Debtors testified that they did not intend to conceal any assets and if they had been asked about previous tax refunds, the Debtors would have indicated that they had received tax refunds in previous years and were likely to receive a tax refund for the 2008 tax year. The amount of the refund, per each Debtor's testimony, was unknown, especially in late August, 2008. The Court finds that both Debtors are credible based upon their demeanor, their direct answers to questions, and the thoughtfulness of their responses. In particular, both Debtors testified in detail regarding their October 20, 2008, first meeting of creditors and recalled details that neither Mr. Ponsetto or the Trustee recalled. In particular, both Debtors recalled that the Trustee did not ask about any tax refunds for 2008.

On December 19, 2008, the Trustee filed an Interim Report. In this report, the Trustee indicated that she was investigating a tax refund. At that time, the Trustee did not file a Report of Undisclosed Asset as required by E.D. Mich. LBR 2015-1.

The Debtors were granted a discharge on December 23, 2008, and the Trustee filed an Annual Report on April 27, 2009, indicating that she was still investigating the tax refund. On May 29, 2009, the Debtors amended Schedule B to disclose a 9/12 interest in 2008 tax return in the amount of $4,842 and amended Schedule C to claim that refund as exempt pursuant to 11 U.S.C. § 522(d)(5). The Trustee filed an objection to the Debtors' claim of exemptions on June 8, 2009. The Trustee's objection to exemptions is based upon the failure of the Debtors to disclose the tax refunds initially and that the estate would be prejudiced if the Debtors were allowed to keep their tax refunds after steps had been taken to liquidate the asset.

At the September 15, 2009, evidentiary hearing, the Debtors testified that their federal and

state tax returns were filed electronically, and that the federal tax return was accepted on February 20, 2009, and the state tax return was accepted on February 21, 2009. The Debtors received their tax refunds shortly after filing their tax returns. Mr. Steiner testified that he first learned that tax refunds were an issue when Mr. Ponsetto contacted him to request copies of his tax returns. The Debtors immediately emailed copies of their tax returns to Mr. Ponsetto, who then forwarded copies of the tax returns to Ms. Corcoran, and Mr. Ponsetto then filed the amended Schedules B and C.

On July 15, 2009, the Trustee filed a Report of Undisclosed Asset indicating that the Trustee discovered on June 1, 2009: "2008 INCOME TAX REFUNDS."

## Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§§ 1334(b), 157(a), and 157(b)(1) and E.D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

## Analysis

Amendments to Schedules are allowed under Fed. R. Bankr. P. 1009(a). Per *Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984), amendments are allowed anytime before a case is closed. A debtor may not have an amendment allowed, however, if the debtor acts in bad faith or where property has been concealed. As directed by the Sixth Circuit in *Lucius*, this Court must inquire as to whether the Debtors acted in bad faith or attempted to conceal property of the estate.

In this case, the Court notes that both Debtors were unaware that tax refunds were property of the estate. They were not advised by their attorney that a pro rata share of their 2008 tax refund was property of the estate. From their testimony, which the Court finds credible, both Debtors testified that they would have told Mr. Ponsetto and the Trustee that they would probably have

3

received a tax refund in 2008 if asked at the relevant time. From the record before the Court, neither Mr. Ponsetto or the Trustee asked the Debtors this basic question. The Court is dismayed why this basic question was not asked either at the meeting between the Debtors and Mr. Ponsetto or at the first meeting of creditors.

No party to this proceeding is blameless. The Debtors are charged with the duty of reviewing their Schedules and completing their Schedules fully, completely, and accurately. If the Debtors had done this, they would have noticed that tax refunds were mentioned at least twice in questions 18 and 21 in Schedule B. Had the Debtors done this, they would have undoubtedly asked Mr. Ponsetto about tax refunds and perhaps these proceedings could have been averted.

Likewise, attorneys for the debtor are charged with knowledge of the law. Their clients rely upon the attorney to guide them through a difficult process and time in their lives. If Mr. Ponsetto had asked a basic question about tax refunds, these proceedings would likewise have been avoided.

At the first meeting of creditors, the Trustee did not ask about any tax refunds that the Debtors may receive for 2008. If that question had been asked, the Debtors, from their testimony of September, 2009, would have answered that refunds were likely to be earned and the Trustee could have avoided the expense of objecting to exemptions and having a number of hearings on this fundamental issue. The Court does note that the Trustee filed Interim and Annual Reports which indicated that 2008 tax refunds were being investigated, but also notes that the Trustee did not comply with E.D. Mich. LBR 2015-1 which requires the Trustee to file a Report of Undisclosed Asset "as promptly as practicable after" discovery of that asset.

The Court notes that the entire bankruptcy process regarding tax refunds is not working well. Debtors seem unwilling or unable to disclose tax refunds even though tax refunds are property of

4

the estate. *Araj v. Kahut (In re Araj)*, 371 B.R. 240, 243 (Bankr. E.D. Mich. 2007). In turn, trustees appear unwilling to inquire about tax refunds. When this happens, Chapter 7 trustees spend a large amount of time tracking down an asset that may subsequently be included in the estate and then exempted.

Applying a strict *Lucius* analysis, there is nothing before this Court to indicate that the Debtors attempted to conceal their 2008 tax refund or that they acted in bad faith. Instead, the record is clear to this Court that the Debtors merely relied upon advice of counsel and, at worst, did not carefully read their Schedules and then inquire about tax refunds when those Schedules were signed.

The Court holds to the *Lucius* decision and finds that the Debtors' amendment to Schedules B and C should be allowed. In particular, the reliance of the Debtors on the advice of their counsel, coupled with the lack of the Trustee to question the Debtors about tax refunds at the first meeting of creditors, leads this Court to conclude that the Debtors did not have any intent to conceal an asset and did not subsequently amend their Schedules in bad faith. The Court does note that the actions in this case pre-date this Court's decision in *In re Laroche*, Case No. 08-33302, and the Court will not impose the *Laroche* standards on these Debtors. Stated differently, debtors are still expected to amend Schedules B and C within 14 days of when a tax return is filed absent special circumstances or a written request filed with the Court to extend that deadline.

The Court does add this cautioning caveat. In particular, the Court does not intend to set a precedent that ignorance of the law excuses the requirement to amend Schedules. Any attorney reading this Opinion who reaches the conclusion that the advice given by Debtors' counsel in this case is a good defense to a trustee's objection to exemptions is sadly mistaken.

Because of the nature of the testimony of the Debtors in this case and the statements of Debtors' counsel that he was either unaware of the *Araj* decision, or otherwise believed that tax refunds were not property of the estate and did not need to be disclosed in Schedule B, this Court reiterates that tax refunds are indeed property of the estate and must be disclosed in Schedule B on a prorated basis consistent with *Araj*.

In other decisions, this Court has declined to apply the concept of laches as identified in *Shapiro v. First Franklin Fin. Corp. (In re Rechis)*, 339 B.R. 643 (Bankr. E.D. Mich. 2006), or engage in an analysis of the damage to the estate as stated in *In re Daniels*, 270 B.R. 417 (Bankr. E.D. Mich. 2001). Given the unique nature of this case, including the remarkable comments of counsel and the concern the Court has that others may attempt to plead a lack of knowledge, the Court concludes the following. In this case, the Trustee filed three reports indicating she was either investigating the 2008 tax refunds or had found an undisclosed asset that was the 2008 tax refund. Moreover, the Trustee was required to object to the amended exemptions and then attend hearings regarding that objection. Upon examination of the Court's docket in this case, the Court notes that the Debtors agreed to pay a flat fee of $1,301 to their attorney and that $501 had been paid, leaving a balance of $800 owed by the Debtors to their attorney. The Court also notes that the Trustee has incurred expenses regarding the non-disclosure and late disclosure of the tax refunds. In fact, because counsel for the Debtors did not inform his clients of the need to attend a hearing on August 26, 2009, which required this Court to adjourn the evidentiary hearing to September 15, 2009, the Trustee had to prepare for and attend an additional evidentiary hearing. The Trustee has filed an application with this Court seeking $600 for the three hours spent preparing and attending this adjourned evidentiary hearing. The Court grants the Trustee her request to award fees in the amount

6

of $600 and assesses that amount against Debtors' counsel for failure to communicate to his client regarding the need to attend this hearing.

In addition, the Court awards another $300 in favor of the estate to be paid from the amounts owed by the Debtors to their attorney. In the event the Debtors have paid their attorney all of the $800 that is owed, then Debtors' counsel is to disgorge $300 to the estate. This decision is based upon the Debtors' counsel's failure to understand the importance of the *Araj* decision and the need to disclose tax refunds on Schedules, as well as compensation for partial damage incurred by the estate for having to take actions outlined in this Opinion.

The Court understands that the $900 awarded to the estate may not fully compensate the estate for the time expended in this area. Additional monies may have been awarded had the Trustee inquired at the first meeting of creditors about the tax refunds. While the Court understands that the Trustee is not required to go through each line item of the Schedules, the Court does note that the Trustee had a copy of the 2006 and 2007 tax returns and could have easily asked a few questions to avoid the proceedings related to this case.

The Court will enter an order consistent with this Opinion.

**Signed on October 23, 2009**

                                                   **/s/ Daniel S. Opperman**
                                           **Daniel S. Opperman**
                                           **United States Bankruptcy Judge**